**AMERICAN BANKERS INSURANCE GROUP, INC., Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**No. 03–21822HUCK/TURNOFF.**

United States District Court, S.D. Florida.

Jan. 29, 2004.

Franklin G. Burt, Farrokh Jhabvala, Jorden Burt LLP, Miami, Henry D. Levine, Stephen J. Rosen, Levine Blaszak Block & Boothby, Washington, DC, for American Bankers Insurance Group, plaintiff.

Christopher Henry LaRosa, United States Department of Justice, Tax Division, Washington, DC, for United States, defendant.

### *ORDER ON MOTIONS FOR SUMMARY JUDGMENT*

HUCK, District Judge.

THIS MATTER is before the Court on the Plaintiff's Motion for Summary Judgment, filed October 10, 2003 [DE # 13], and the Defendant's Cross–Motion for Summary Judgment, filed December 16, 2003 [DE # 26]. The Court has considered both parties' motions, responses, and replies, heard oral argument, and permitted additional briefing on one issue raised during oral argument. Being fully advised, and for the following reasons, the Court grants the Defendant's Cross–Motion and denies the Plaintiff's Motion.

### Factual Background

American Bankers Insurance Group, Inc. ("ABIG"), a Florida corporation headquartered in Miami, purchased, from AT & T, interstate and international long-distance telephone service and intrastate long-distance telephone service in the states of Florida, Georgia, Michigan, Ohio, and Oklahoma during the period from October 1, 1998, through March 31, 2002. Under the relevant contracts, or tariffs, ABIG paid a uniform toll rate for all interstate calls made within the United States, uniform toll rates for all intrastate long-distance calls made within the five states noted above, and toll rates for international calls (except for calls to and from Mexico) that varied only according to which country the calls were being placed. AT & T collected federal excise taxes on all these services and remitted them to the Internal Revenue Service ("IRS"). On February 22, 2002, ABIG filed claims with the IRS for a refund of $288,496.10 for the federal excise taxes collected on services rendered from October 1, 1998, to September 30, 2001. On October 25, 2002, ABIG filed claims for a refund of an additional $73,267.14 for the taxes on phone calls placed during the period from October 1, 2001, to March 31, 2002. In support of its claims, ABIG contended that the applicable federal law does not impose an excise tax on long-distance telephone calls that do not vary in rate based on the distance of the telephone call. The IRS received both of these claims, but has not responded to either.[1] On July 8,

1. In order to recover a refund on federal taxes, a Plaintiff must first exhaust adminis-

2003, ABIG filed a complaint in this Court requesting a refund.[2]

## Analysis

Summary judgment is appropriate if the pleadings, depositions, and affidavits show that there is no genuine issue of material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The parties agree that there are no material issues of fact in dispute in this case and that this matter is, therefore, appropriate for resolution on summary judgment.

The critical question to be resolved by this Court is whether the telephone services purchased by ABIG fall within the statutory definition of toll telephone service under the relevant section of the Internal Revenue Code. That section defines toll telephone service as:

(1) a telephonic quality communication for which (A) there is a toll charge which varies in amount with the distance and elapsed transmission time of each individual communication and (B) the charge is paid with the United States, and

(2) a service which entitles the subscriber, upon payment of a periodic charge (determined as a flat amount or upon the basis of total elapsed transmission time), to the privilege of an unlimited number of telephonic communications to or from all or a substantial portion of the persons having telephone or radio telephone stations in a specified area which is outside the local telephone system area in which the station provided with the service is located.

26 U.S.C. § 4252(b). The Court must thus determine whether long-distance service based on a toll rate that is dependent only on elapsed time and which does not vary based on distance satisfies the definition of toll telephone service under this statute. Because the Court finds that the intent of § 4252(b)(1) was to impose an excise tax on commercial long-distance telephone service, regardless of whether the toll charge varies by both distance and time, the Court finds that ABIG is liable for the tax on its telephone service.[3]

## I. Statutory Construction

 The purpose of statutory construction is to determine the intent of the legislature in enacting the statute. In determining congressional intent, courts should give overriding deference to the unambiguous language of a statute. *See, e.g., Napier v. Preslicka,* 314 F.3d 528, 532 (11th Cir.2002), *cert. denied,* —— U.S. ——, 124 S.Ct. 1038, 157 L.Ed.2d 901 (2004); *In re Paschen,* 296 F.3d 1203, 1207 (11th Cir.) ("When the language of a statute is unambiguous, we need go no further, because we must presume that Congress 'said what it meant and meant what it said.'") (cita-

---

trative remedies by requesting a refund from the IRS. *See United States v. Williams,* 514 U.S. 527, 533, 115 S.Ct. 1611, 131 L.Ed.2d 608 (1995). The Defendant does not dispute that ABIG timely filed its refund claims, but does note that it has been unable to verify the exact amount of federal excise taxes paid by ABIG and that ABIG has not provided any proof of payments in these amounts. Because the size of ABIG's requested refund does not bear on the issue before the Court of whether ABIG is entitled to *any* refund, this does not create a material factual dispute which would preclude summary judgment.

2. Although both parties' Motions propose adoption of other undisputed facts, these few facts are sufficient to resolve the dispositive legal issue.

3. Defendant makes alternative arguments that ABIG's telephone services could be taxed as local telephone service or as toll telephone service under § 4252(b)(2). Upon the finding that the Plaintiff is liable for the excise tax under § 4252(b)(1), the Court will not address Defendant's alternative arguments.

tion omitted), *cert. denied,* 537 U.S. 1097, 123 S.Ct. 696, 154 L.Ed.2d 648 (2002). A court may look at evidence of legislative intent other than the statutory language in only three circumstances:

> We may look to evidence of Congressional intent outside the four corners of the statute if "(1) the statute's language is ambiguous; (2) applying it according to its plain meaning would lead to an absurd result; or (3) there is clear evidence of contrary legislative intent."

*Moore v. Am. Fed'n of Television & Radio Artists,* 216 F.3d 1236, 1244 (11th Cir.2000) (quoting *United States v. DBB, Inc.,* 180 F.3d 1277, 1281 (11th Cir.1999)).

### A. *Ambiguity*

 The first question, then, is whether the statutory language is ambiguous. "When a statute is vague or ambiguous, other interpretive rules may be used, including an examination of the act's purpose and of its legislative history." *United States v. Pringle,* 350 F.3d 1172, 1180 n. 11 (11th Cir.2003). "Any ambiguity in the statutory language must result from the common usage of that language, not from the parties' dueling characterizations of what Congress really meant." *CBS Inc. v. PrimeTime 24 Joint Venture,* 245 F.3d 1217, 1225 (11th Cir.2001). The determination of whether language is plain and unambiguous should take into account the statutory language itself, the specific context in which that language is used, and the broader context of the statute as a whole. *United States v. Drury,* 344 F.3d 1089, 1097–98 (11th Cir.2003) (citing *Robinson v. Shell Oil Co.,* 519 U.S. 337, 340, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997)).

While Defendant suggests ambiguity in Congress's use of the singular to define "quality telephonic communication" and in the overall wording of that definition, the Court finds § 4252(b)(1) ambiguous for a simpler reason: its use of the word "and" in the phrase "a toll charge which varies in

amount with the distance and elapsed transmission time of each individual communication." 26 U.S.C. § 4252(b)(1). Plaintiff contends that "and" is unambiguous and can only mean in this context that *both* time and distance must vary in order for the tax to be imposed. The Court disagrees.

It is a time-honored principle of statutory construction that "it is the duty of the court to ascertain the clear intention of the legislature. In order to do this, courts are often compelled to construe 'or' as meaning 'and,' and again 'and' as meaning 'or.'" *United States v. Fisk,* 70 U.S. (3 Wall.) 445, 447, 18 L.Ed. 243 (1865) (further noting that "[a]s is often the case in statutes, though the intention is clear, the words used to express it may be ill chosen"); *see also Peacock v. Lubbock Compress Co.,* 252 F.2d 892, 894 (5th Cir.1958) ("This whole case turns on one word. Does the word 'and' mean and? Does it mean or? May it have been primarily used as a comma?"); *United States v. Gomez–Hernandez,* 300 F.3d 974, 978 (8th Cir.2002), *cert. denied sub nom Alcaras–Navarro v. U.S.,* 537 U.S. 1138, 123 S.Ct. 929, 154 L.Ed.2d 831 (2003); *Kelly v. Wauconda Park Dist.,* 801 F.2d 269, 270–71 (7th Cir.1986) (holding that the question of whether two sentences were intended to be written conjunctively or disjunctively created ambiguity in the meaning of the statute).

 Further, the dictionary notes that "and" has many different meanings and usages, depending on its context. *See Webster's Third New International Dictionary* at 80 (1966). Among these definitions, the dictionary specifically states that "and" is a "function word" that can be used as a "reference to either or both of two alternatives ... esp[ecially] in legal language when also plainly intended to mean *or* <bequeathed to a person [and] her bodily issue> <property taxable for

state [and] county purposes>." *Id.; see also Peacock,* 252 F.2d at 894 ("But the word 'and' is not a word with a single meaning, for, chameleon like, it takes its color from its surroundings."). "Ordinarily, the use of the term 'or' in a statute signifies a disjunctive requirement, while 'and' signifies a conjunctive one." *United States v. Brennick,* 908 F.Supp. 1004, 1015 (D.Mass.1995). However, it is equally clear that "a statute's use of disjunctive or conjunctive language is not always determinative. Rather, we must strive to give effect to the plain, common-sense meaning of the enactment without resorting to an interpretation that 'def[ies] common sense.'" *United States v. Bonilla–Montenegro,* 331 F.3d 1047, 1051 (9th Cir.2003) (internal citation omitted); *see also Brennick,* 908 F.Supp. at 1014 ("[T]he ultimate meaning of these words depends on the context in which they are used.") (citing *United States v. One 1973 Rolls Royce,* 43 F.3d 794, 814–16 (3rd Cir.1994)); *United States v. Cumbee,* 84 F.Supp. 390, 391 (D.Minn.1949) ("Although this result may give 'and' the meaning of 'or,' in effect, the Supreme Court recognizes that if such a result correctly interprets the intent of Congress, the court is not changing the meaning of the statute.").

■ In this case, the statute defines one type of toll telephone service as a telephonic quality communication for which "there is a toll charge which varies in amount with the distance *and* elapsed transmission time of each individual communication." 26 U.S.C. § 4252(b)(1) (emphasis added). The Court finds that the statutory language is ambiguous because Congress could be using the conjunctive word "and" in this instance to mean "either or both of two alternatives," that is, to mean where there is a toll charge which varies in amount with the distance or elapsed transmission time or both. In the context of the whole statute, this reading of "and" as "or" is even more clearly supported.[4] In fact, later in the same sentence, the word "and" is used to connect § 4252(b)(1) and § 4252(b)(2). Both parties agree that subsections (b)(1) and (b)(2) each define a different kind of toll telephone service, and that satisfaction of either definition would subject the party to the excise tax. Therefore, that "and" must be read as "or," since a toll telephone service must not simultaneously meet both definitions in order to be taxable. Similarly, in § 4251(a), the statute imposes a tax on "communications services." Section 4251(b) then states that communications services "means (A) local telephone service; (B) toll telephone service; *and* (C) teletypewriter service." *Id.* (emphasis added). Since each of these services is a separate and mutually exclusive type of service, the "and" in § 4251(b) does not mean that a communications service must be A, B, *and* C; rather, a service will qualify as a communications service if it is A, B, *or* C.

4. Plaintiff claims that "no fair reading of § 4252(b)(1)" would allow the phrase to be read as "either distance or elapsed transmission time." However, there is nothing inherent in the wording of the statutory language itself that makes it clear that the phrase could not mean "distance or elapsed transmission time or both." Plaintiff's construction, rather, relies on extrinsic evidence that Congress defined toll telephone service in this manner because it was describing AT & T toll services that were available at the time of enactment.

If the words were truly unambiguous, as Plaintiff contends, resort to such extrinsic evidence of congressional intent would be unnecessary. Moreover, Plaintiff concedes that "and" can be used in the cumulative sense to mean "or" and agrees that Congress did use the word in this fashion in other portions of this Act. Thus, the unclear use of the word "and" is sufficient to create an ambiguity that allows examination of congressional intent through extrinsic evidence.

Thus, this alternative interpretation of "and" as "or" is supported by the dictionary definition, by Congress's use of the word in § 4252(b)(1), and by the use of "and" in other portions of the statute.[5] In such circumstances, "and" may appropriately be read disjunctively as "or," as well as conjunctively to mean "and." *Cf. United States v. Scrimgeour,* 636 F.2d 1019, 1024 (5th Cir. Unit B 1981) (holding that, where "or" was used in a statute, "[t]he conjunctive reading of [the statute] comports with accepted principles of statutory construction and is supported by the underlying congressional intent.").[6] Section 4252(b)(1) is therefore ambiguous, and extrinsic evidence of congressional intent may be consulted.

## B. *Strong Evidence of Contrary Legislative Intent*

■ The plain reading proposed by the Plaintiff is also clearly at odds with congressional intent. A long line of cases, including several Supreme Court and Eleventh Circuit cases, have concluded that:

> [E]ven when the plain meaning did not produce absurd results but merely an unreasonable one "plainly at variance with the policy of the legislation as a whole," this Court has followed that purpose, rather than the literal words. When aid to construction of the meaning of words, as used in the statute, is available, there certainly can be no "rule of law" which forbids its use, however clear the words may appear on "superficial examination."

*United States v. Am. Trucking Ass'ns,* 310 U.S. 534, 543–44, 60 S.Ct. 1059, 84 L.Ed. 1345 (1940) (internal citations omitted); *accord United States v. Ron Pair Enters., Inc.,* 489 U.S. 235, 242–43, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989) ("The plain meaning of legislation should be conclusive, except in the 'rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of the drafters' . . . . In such cases, the intention of the drafters, rather than the strict language, controls.") (internal citation omitted); *Bob Jones University v. United States,* 461 U.S. 574, 586, 103 S.Ct. 2017, 76 L.Ed.2d 157 (1983) ("It is a well established canon of statutory construction that a court should go beyond the literal language of a statute if reliance on that language would defeat the plain purpose of the statute."); *see also In re Paschen,* 296 F.3d 1203, 1207 (11th Cir.2002) (quoting *Ron Pair,* 489 U.S. at 242, 109 S.Ct. 1026), *cert. denied,* 537 U.S. 1097, 123 S.Ct. 696, 154 L.Ed.2d 648 (2002); *United States v. DBB, Inc.,* 180 F.3d 1277, 1281 (11th Cir. 1999) (noting the court can look beyond unambiguous statutory language at extrinsic materials to determine congressional

---

5. Plaintiff's argument that reading "and" as "or" would then also compel the Court to read the remainder of the sentence—"*and* (B) for which the charges are paid in the United States"—as "*or* (B) for which the charges are paid in the United States" is unavailing. Each "and" must be read in context, and there is no reason to suspect that Congress might have meant for that "and" to be read disjunctively.

6. Although, in its briefs and during oral argument, Plaintiff cited three cases for the proposition that the term "and" must be construed conjunctively, those cases merely found that Congress intended "and" to be used conjunctively in those statutes. *See Crooks v. Harrelson,* 282 U.S. 55, 58, 51 S.Ct. 49, 75 L.Ed. 156 (1930); *City of Rome v. United States,* 446 U.S. 156, 172, 100 S.Ct. 1548, 64 L.Ed.2d 119 (1980); *Follette v. Wal–Mart Stores, Inc.,* 47 F.3d 311, 313 (8th Cir.1995). For example, in *Crooks,* the Court stated "[w]e find nothing in the context or in other provisions of the statute which warrants the conclusion that 'and' was used otherwise than in its ordinary sense." *Id.* In the case of § 4252(b)(1), there are indications from context and in other provisions that "and" was, or could have been, intended to mean "or."

intent if there is "clear evidence of contrary legislative intent"); *In re Hoggle*, 12 F.3d 1008, 1010 (11th Cir.1994) (citing *Ron Pair*, 489 U.S. at 242, 109 S.Ct. 1026).[7]

■ Congress's obvious purpose in enacting, modifying, and reenacting 42 U.S.C. §§ 4251–4254 year after year was to raise revenue by collecting a tax on almost all commercial telephone usage.[8] To put the statute and its amendments in historical context, an excise tax on long-distance communications was first enacted in 1954. Act of Aug. 16, 1954, ch. 736, 68A Stat. 503. In 1958, § 4252 was amended to define taxable toll telephone service as "a telephone or radio telephone message for which (1) there is a toll charge, and (2) the charge is paid within the United States." Excise Tax Technical Changes Act of 1958, Pub.L. 85–859, § 133(a), 72 Stat. 1285, 1290. In 1965, the definition was again amended, changing the definition of toll telephone service to the current definition found in 26 U.S.C. § 4252(b). *See* Excise Tax Reduction Act of 1965, Pub.L. 89–44, § 302, 79 Stat. 136, 146.

At the time of the 1965 amendment, AT & T held a monopoly over all long-distance telephone services. The company offered two types of service. The first type involved calls that were billed per call according to tolls which were calculated based on both the elapsed transmission time and the mileage band that corresponded to the actual distance of the telephonic transmission. The second type of service, Wide Area Telephone Service ("WATS"), provided the subscriber the right to make either unlimited long-distance calls or calls up to a certain hourly limit upon payment of a monthly fee. A description of WATS-type service had not previously been included in the definition of toll telephone service. Both parties agree that the 1965 amendment appears to be an effort by Congress to describe both types of service. However, since 1965, and particularly within the last several years, the billing methods for long distance service have changed, due to a number of industry conditions, including the break-up of the AT & T monopoly and the proliferation of cellular phones. As a result of these conditions, nearly all, if not all, long-distance telephone toll rates for calls that are billed per call now vary only according to political subdivisions (*i.e.*, intrastate, interstate, and international). That is, calls are now billed according to uniform toll rates which are not dependent on the mileage bands AT & T had previously used and which are not otherwise designated as varying according to distance.

It is clear from this context that the 1965 amendment to the excise tax was intended to preserve and expand the scope of the statute to ensure that all commercial long-distance service fell under § 4252(b)'s

---

7. While Plaintiff argues that *American Trucking* is "outmoded judicial precedent," that case remains good law, and the proposition for which it is cited has been recognized as valid by the Eleventh Circuit as recently as 2002. Although some cases do note the tension between the plain meaning rule and the *American Trucking* exception, they attempt to read the two lines of cases in harmony with each other, rather than suggesting that *American Trucking* is not good law. *See, e.g., In re Sinclair*, 870 F.2d 1340, 1342–1343 (7th Cir. 1989); *In re Keinath Bros. Dairy Farm*, 71 B.R. 993, 997–999 (Bkrtcy.E.D.Mich.1987); *see also Hallstrom v. Tillamook County*, 493

U.S. 20, 28–29, 110 S.Ct. 304, 107 L.Ed.2d 237 (reaffirming that the *American Trucking* exception, as enunciated in *Ron Pair Enterprises*, remains good law, even though only applicable in "rare cases"). The Court concludes that this is one of the rare cases where the legislative intent is sufficiently clear that, even were the statutory language unambiguous, the Court would still be entitled to rely on extrinsic evidence of Congressional intent.

8. Certain, clearly delineated exceptions, not pertinent here, are set out in 26 U.S.C. § 4253.

definition of toll telephone service. The Plaintiff's proposed "plain reading" of the statute would clearly defeat this purpose, exempting all or most toll telephone services from taxation because modern long-distance service does not rely on distance as a determinant of toll rate. Thus, even if the Court were to adopt Plaintiff's argument that the statute is unambiguous, the Plaintiff's proposed reading of § 4252(b)(1) would clearly defeat the congressional purpose, and this Court would be permitted to go beyond the strict language used in construing the statute under the *American Trucking* exception to the plain meaning rule.[9] This is especially true given that § 4252(b)(1) can be made consistent with the congressional purpose simply by reading the statutory language as telephonic quality communications which vary with "distance *or* elapsed time" (or "distance and/or elapsed time"). As noted above, it is a common tool of statutory construction to read conjunctive words disjunctively, or vice versa, when necessary to give statutory language the effect intended by Congress. In one case, the court noted that "[f]or us to conclude that Congress meant 'and' in a literal conjunctive sense is to determine that Congress meant in fact to

grant no relief." *Peacock v. Lubbock Compress Co.*, 252 F.2d 892, 894 (5th Cir. 1958) (noting that "[l]iteralism gives way in the face of such considerations"); *see also Bruce v. First Fed. Sav. & Loan Ass'n of Conroe, Inc.*, 837 F.2d 712, 715 (5th Cir. 1988) ("The word 'and' is ... to be accepted for its conjunctive connotation rather than as a word interchangeable with 'or' except where strict grammatical construction will frustrate clear legislative intent."). Similarly, for the Court to conclude here that "and" should be used only in a literal conjunctive sense would require the Court to read the statute as an abolition of the tax on toll telephone charges, when it is quite clear that the 1965 amendment, in fact, meant to preserve and expand the tax.[10]

## II. Extrinsic Evidence of Congressional Intent Behind 26 U.S.C. § 4252(b)

Because the Court finds that the language of this statute is ambiguous, it may look at other evidence of congressional intent in attempting to discern the meaning of § 4252(b)(1).[11] "When interpreting an ambiguous statute, a court should 'consider the purpose, the subject matter and the condition of affairs which

---

9. A court may also look past clear and unambiguous language if such a plain meaning interpretation leads to an absurd result. *See, e.g., United States v. McLymont*, 45 F.3d 400, 401 (11th Cir.1995); *In re McCollam*, 986 F.2d 436, 437 (11th Cir.1992) (where the meaning of a statute is clear and unambiguous, "[t]his Court will not go behind the plain and ordinary meaning of the words used in the statute unless an unreasonable or ridiculous conclusion would result from a failure to do so"). It is arguable that the Plaintiff's reading of § 4252(b)(1) would lead to an absurd result because it would render § 4251 a nullity by exempting all current long-distance service from the excise tax. However, the Court need not reach that question, since the statute is both ambiguous as written and, even under Plaintiff's proposed unambiguous reading, clearly contrary to legislative intent.

10. It is true that the 1965 Amendment included a clause phasing out the tax entirely by 1969. However, that should only serve as further evidence that this change was not meant to eliminate or limit the tax in 1965. In fact, subsequent Congresses voted for numerous extensions of the termination date for the tax and, eventually, in 1990, repealed the termination clause of the 1965 amendment altogether, making the toll telephone service excise tax as a permanent part of the country's tax structure.

11. As previously discussed, the Court would otherwise be able to rely on outside evidence of congressional intent because Plaintiff's reading of the "plain meaning" of § 4252(b)(1) is clearly at variance with the purpose of the statute.

led to its enactment, and so construe it as to effectuate and not destroy the spirit and force of the law and not to render it absurd.'" *United States v. DBB, Inc.,* 180 F.3d 1277, 1283 (11th Cir.1999) (quoting *Lambur v. Yates,* 148 F.2d 137, 139 (8th Cir.1945)) (further noting that, where an interpretation "would frustrate the congressional intent . . . ., [c]ommon sense requires that we reject the idea that Congress entertained any such notion"). Among the tools available for this effort are analysis of the legislative history, reliance on agency regulations or interpretations, and consideration of congressional reenactment of a provision. *See Cottage Savings Ass'n v. Commissioner,* 499 U.S. 554, 561, 111 S.Ct. 1503, 113 L.Ed.2d 589 (1991); *United States v. Baxter Int'l, Inc.,* 345 F.3d 866, 886–87 (11th Cir.2003) (where a statute is ambiguous, "the reasonable interpretation of the agency charged with implementing the statute is entitled to judicial deference"); *Royal Caribbean Cruises, Ltd. v. United States,* 108 F.3d 290, 293 (11th Cir.1997). Examination of each type of extrinsic evidence leads to the same conclusion: Congress did not intend to limit the excise tax on toll telephone calls only to those which vary by both time and distance.

### A. *Purpose of Statute and Context of Enactment*

The evident purpose of both the original §§ 4251–4254 and the 1965 amendments to those sections was to raise revenue through a tax on telephone services. From a reading of those sections, it is clear that the legislative intent was to impose an excise tax on all commercial local and long-distance telephone services, as well as on telegraph services. When taken in the context of its enactment, it becomes even clearer that the 1965 amendment was merely an attempt to clarify the definitions of local and toll telephone service based on the then-current state of technology and on the structure of the telecommunications field at the time. As noted above, neither side disputes that the 1965 amendment to the definition of toll telephone service appears to be an attempt to describe the two types of AT & T service that were then the only types of commercial long-distance services available. It can thus be inferred that Congress was attempting to expand the definition to ensure that all long-distance services that were then available would be taxed, further supporting that Congress's intent was to tax all commercial long-distance services.

Although long-distance billing practices may have changed since that time, the intent behind the 1965 amendment to ensure that all long-distance calls placed through a commercial carrier were taxed remains unchanged. Reading "and" as "or" would further that purpose, since it would provide a definition that is more inclusive of the various types of long-distance telephone service currently provided. To do otherwise would virtually eliminate all revenue raised by this tax, since, as discussed above, almost all current long-distance telephone services are calculated solely on the basis of elapsed time, using a uniform toll rate that is not dependent on the distance of the call. Thus, the Plaintiff's proposed interpretation that "and" must be read conjunctively would exempt these long-distance services from taxation and virtually abolish the tax, not by any clear congressional intent to do so, but merely due to the changes in industry conditions.

### B. *Legislative History*

The legislative history of the 1965 amendment provides further support for that legislative intent. ABIG concedes that, as 26 U.S.C. § 4252(b) read prior to the 1965 amendment, its services would have been subject to the excise tax, be-

cause the pre–1965 statute defined toll telephone service as telephonic communications for which there was a toll charge that was paid within the United States. Plaintiff contends, however, that the intent behind the 1965 amendment was to change the definition such that only toll charges that were dependent on both time and distance were taxed. For this proposition, Plaintiff cites to the part of the legislative history that merely restates the new statutory definition, but which does not give any indication of the congressional intent. H.R. No. 89–433, 1965 U.S.C.C.A.N. 1645, 1677 ("Toll telephone service is defined as being a telephonic quality communication for which a toll charge is made which varies in amount with the distance and lapsed transmission time of individual communications."). However, in the preceding sentence, the legislative history *does* clearly state the reason for the amendment to the definitions in § 4252:

> The definitions of local telephone service (previously general telephone service), toll telephone service, and teletypewriter exchange service have been updated and modified to make it clear that it is the service as such which is being taxed and not merely the equipment being supplied. Thus, in the case of local telephone service, the definition makes it clear that it is the right of communication which is taxed together with facilities or serviced provided with this service.

*Id.* at 1676–77. Thus, the legislative history indicates only that the amendment was meant to clarify that the service, and not the equipment, was the subject of the tax. There is no indication that the change in definition was meant to alter, and certainly not dramatically eliminate, the types of service that were taxed.

### C. *Deference to Long–Standing Agency Interpretation*

In 1979, the IRS issued *Communications; Offshore Radio Telephone Service Satellite,* 1979 WL 51192, Revenue Ruling 79–404 (IRS RRU 1979), which indisputably supports the interpretation that § 4252(b) does not require that a toll rate be based on both distance and elapsed time. Rev. Rul. 79–404, 1979–2 C.B. 382. That Revenue Ruling considered whether ship-to-shore communications, which were charged according to a single rate regardless of the distance of the communication, could be taxed under § 4251. *Id.* Although the IRS concluded that these communications did not meet the literal definition of § 4252(b)(1) because the charge for this service did not vary with both distance and elapsed time, it found that "the legislative history [of the 1965 amendment] ... indicates that Congress intended to exempt certain *private* communication services from the tax," [12] yet found "no indication that Congress otherwise intended to make changes in the types of service subject to the tax." *Id.* (emphasis added). The agency concluded that "the intent of the statute would be frustrated if a new type of service otherwise within such intent were held to be nontaxable merely because charges for it are determined in a manner which is not within the literal language of the statute." *Id.* Thus, the clear conclusion from this agency interpretation is that Congress intended for commercial long-distance telephone service to be taxed

---

12. The 1965 amendment also added a definition for private (as opposed to commercial) communication services—those which entitle the subscriber to "exclusive or priority use of any communication channel or group of channels" or "to the use of an intercommunication system for the subscriber's stations"—and exempted these services from the tax. *See* 26 U.S.C. § 4252(d); Excise Tax Reduction Act of 1965, Pub.L. 89–44 § 302, 79 Stat. 136, 146.

under the statute, even where the toll rate for that service does not vary by distance.

The only real question for the Court with respect to this agency interpretation is the level of deference to which the agency opinion is entitled. Plaintiff contends that the interpretation is entitled to little deference because it is merely an informal statement of the IRS's position and is not recorded in any regulation.[13] Defendant argues that, under any standard of deference, the Revenue Ruling is entitled to great weight because it is reasonable and persuasive, but that it should enjoy a greater degree of deference because the Ruling represents a longstanding agency interpretation of the statute. In *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* the Supreme Court held that "considerable weight should be accorded to an executive department's construction of a statutory scheme it is entrusted to administer" and that "a court may not substitute its own statutory construction of a statutory provision for a reasonable interpretation made by the administrator of an agency." 467 U.S. 837, 844, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). Several years later, the Court clarified that deference to the degree required by *Chevron* is only warranted where the statutory interpretation is recorded in a regulation that was subject to notice-and-comment rulemaking or was promulgated in a manner similar to formal rulemaking. *See United States v. Mead Corp.,* 533 U.S. 218, 230–231, 121 S.Ct. 2164, 150 L.Ed.2d 292 (2001).

In this case, Revenue Ruling 79–404 was not subject to notice-and-comment rulemaking or to any similar formal process. Plaintiff is thus correct that revenue rulings neither have "the force and effect of regulations," *Davis v. United States,* 495 U.S. 472, 484, 110 S.Ct. 2014, 109 L.Ed.2d 457 (1990), nor can they be used to "overturn the plain language of a statute," *Commissioner v. Schleier,* 515 U.S. 323, 336 n. 8, 115 S.Ct. 2159, 132 L.Ed.2d 294 (1995). However, as Plaintiff concedes, a revenue ruling is entitled to as much weight as its persuasiveness allows, much like a decision from a different circuit can be persuasive but is not binding on this Court. *See Christensen v. Harris County,* 529 U.S. 576, 587, 120 S.Ct. 1655, 146 L.Ed.2d 621 (2000) ("[I]nterpretations contained in formats such as opinion letters are 'entitled to respect' ... but only to the extent that those interpretations have the 'power to persuade ....'"); *Anselmo v. Commissioner,* 757 F.2d 1208, 1213 n. 5 (11th Cir.1985) ("A revenue ruling does not have the effect of a regulation or a statute. It is entitled to weight, however, because it expresses the studied view of the agency whose duty it is to carry out the statute."); *see also Aeroquip–Vickers, Inc. v. Commissioner,* 347 F.3d 173, 181–82 (6th Cir. 2003) ("[T]he level of deference to be accorded to [a] Revenue Ruling ... 'depends upon .... all those factors which give it power to persuade, if lacking power to control.'") (citing *Mead,* 533 U.S. at 228, 121 S.Ct. 2164, and quoting *Skidmore v. Swift & Co.,* 323 U.S. 134, 135, 65 S.Ct. 161, 89 L.Ed. 124 (1944)). Further, although the Supreme Court has declined to "decide whether Revenue Rulings themselves are entitled to deference," the Court has noted that a "longstanding interpretation," if "reasonable, ... attracts substantial judicial deference." *United States v. Cleveland Indians Baseball Co.,* 532 U.S. 200, 220, 121 S.Ct. 1433, 149 L.Ed.2d 401 (2001); *see also United States v. Baxter Int'l, Inc.,* 345 F.3d 866, 886–87 (11th Cir. 2003) ("The consistency of an agency's in-

---

**13.** Plaintiff also argues that this interpretation is entitled to no weight because it contradicts the plain meaning of § 4252(b)(1). Since the Court has found that section to be ambiguous, this argument is rejected.

terpretation over time is a factor in determining the level of deference due.").

Even allowing for only the lowest level of deference conceded by Plaintiff, Revenue Ruling 79–404 would be entitled to some weight due to its persuasive analysis of legislative intent. However, the conclusion reached in that ruling, which was promulgated twenty-five years ago, has also been consistently applied before and after its publication and has been cited approvingly in agency rulings since that time. *See, e.g.,* Priv. Ltr. Rul. 200227008, 2001 PRL LEXIS 2102 (Mar. 8, 2001); Priv. Ltr. Rul. 200009005, 1999 PRL LEXIS 1871 (Nov. 8, 1999). Further, likely in response to lawsuits such as this, the IRS has recently proposed a regulation which would record this longstanding interpretation in a form that will be entitled to greater deference in the future. *See* Prop. Treas. Reg. § 49.4252.0, 68 Fed.Reg. 15,690 (Apr. 1, 2003). Accordingly, this Court affords the Ruling great weight because it expresses a longstanding IRS interpretation of § 4252(b)(1), it is entirely reasonable, and it is consistent with the intent of Congress to tax commercial long-distance telephone services.[14]

### D. *Congressional Re–Enactment*

The United States also argues that, even if the IRS Ruling were not entitled to great deference on its own merit, it should be inferred that Congress approved of the ruling due to Congressional re-enactment of the tax. *See Cleveland Indians,* 532 U.S. at 221, 121 S.Ct. 1433; *Cottage Savings Ass'n v. Commissioner,* 499 U.S. 554, 561, 111 S.Ct. 1503, 113 L.Ed.2d 589 (1991). "Treasury regulations and interpretations long continued without substantial change, applying to unamended or substantially reenacted statutes, are deemed to have received congressional approval and have the effect of law." *Cottage Savings,* 499 U.S. at 561, 111 S.Ct. 1503. Since 1965, the excise tax on telephone service has been amended and reenacted numerous times, including being reenacted seven times since 1979, the year the IRS issued Revenue Ruling 79–404, without alteration to the definition of toll telephone service in § 4252(b)(1). *See* Pub.L. 96–499, § 1151, 94 Stat. 2694 (1980); Pub.L. 97–34, § 821, 95 Stat. 351 (1981); Pub.L. 97–248, § 282(a), 96 Stat. 568 (1982); Pub.L. 98–369, § 26, 98 Stat. 507 (1984); Pub.L. 99–514, § 1801(b), 100 Stat. 2785 (1986); Pub.L. 100–203, § 10501, 101 Stat. 1330–438 (1987); Pub.L. 101–508, § 11217(a), 104 Stat. 1388–437 (1990). Plaintiff argues, however, that there is no evidence that Congress was aware of the Revenue Ruling and that, in the absence of such knowledge, "reenactment without change in relevant statutory language and mere Congressional inaction are at best unreliable indications of Congressional intent to adopt an administrative construction of a statute." *ABC Rentals v. Commissioner,* 142 F.3d 1200, 1205 (10th Cir. 1998); *see also Commissioner v. Glenshaw Glass Co.,* 348 U.S. 426, 431, 75 S.Ct. 473, 99 L.Ed. 483 (1955) ("Re-enactment—particularly without the slightest affirmative indication that Congress ever had the … decision before it—is an unreliable indici-

---

**14.** The *Cleveland Indians* case is slightly distinguishable from this case because, there, the Supreme Court stated that the Revenue Ruling's interpretation of an IRS *regulation* (which in turn interpreted a statutory provision) was entitled to substantial deference. Here, the Revenue Ruling is simply a longstanding interpretation of the statute itself. Nonetheless, the clear import of the Supreme Court's decision is that a longstanding, consistent agency interpretation is entitled to more weight than one that was recently minted or that is inconsistent with other agency interpretations. Moreover, the Court does not rest its decision on the agency interpretation, but merely acknowledges it is one of several indications of congressional intent.

um at best."); *Ashland Oil v. Commissioner*, 95 T.C. 348, 1990 WL 139423 (1990) ("Respondent has not, however, shown that Congress has been even aware of the administrative interpretation, which has not been litigated in a reported decision and has been cited in only a smattering of private letter rulings. Without affirmative indications of congressional awareness and consideration, we decline to cloak this revenue ruling with the aura of legislative approval."). Defendant, on the other hand, argues that the language of the *Cottage Savings* case makes it clear that actual knowledge by Congress is not required; rather, Congress is "deemed" to have concurred if reenactment occurs subsequent to promulgation of an administrative regulation or interpretation.

The Court need not fully resolve this dispute because, even if re-enactment in the wake of the statute is, in itself, only an "unreliable indication of Congressional intent," there is other evidence that Congress understood the definition of toll telephone service to include all long-distance telephone calls, even those that varied only by time. The legislative histories of both the 1986 reenactment of the excise tax and of a 1997 amendment support that subsequent Congresses understood the tax to apply to all long-distance service. In the legislative history of the 1986 reenactment, the law is described as imposing a three percent tax on "toll (long-distance) telephone service." H.R. Conf. Rep. 100–495, 1987 U.S.C.C.A.N. 2313–1245, 2313–1745. In 1997, the legislative history of an amendment adding a paragraph to the statute on prepaid calling cards also states that "a 3–percent excise tax is imposed on amounts paid for local and toll (long-distance) telephone service and teletypewriter exchange service." H.R. Rep. 105–148 at 490, 1997 U.S.C.C.A.N. 678. The legislative history continues to state that payments for prepaid calling cards "clearly represent payments for long-distance telephone service and [the amendment] clarifies that such payments are subject to the communications excise tax." *Id.* Further, this legislative history supports that Congress intended to make sure that virtually *all* commercial long-distance service was covered by §§ 4251 and 4252, and that language which would ensure that prepaid calling cards would be subject to the tax was thus added to the statute to further this goal.

Thus, while Plaintiff argues that the Court may not make policy by "rewriting" the tax code, the reenactment of the tax and the statements in subsequent legislative histories make it clear that the Court is not doing so here. Whether or not subsequent Congresses were aware of Revenue Ruling 79–404, these Congresses clearly understood §§ 4251 and 4252 to impose a tax on all commercial long-distance service, not just service where the toll rate actually varied by both distance and time. Congress's failure to amend the definition of toll telephone service thus can be explained by its impression that the definition adopted in 1965 already adequately described all long-distance services. Therefore, the Court reads the statute in light of that evident congressional intent and must enforce the imposition of the excise tax in this case.

## Conclusion

For the foregoing reasons, the Court finds that the statutory language of 26 U.S.C. § 4252(b)(1) is ambiguous and that the clear intent of Congress from before the 1965 amendment up to the present day has been to tax all long-distance telephone service, regardless of whether the toll rate for that service varied only by distance, only by elapsed time, or by both. As such, the Defendant United States' Cross–Motion for Summary Judgment is GRANTED, and the Plaintiff ABIG's Motion for Summary Judgment is DENIED.

### FINAL JUDGMENT

Pursuant to the Order on Motions for Summary Judgment, entered this date, it is hereby ORDERED that Plaintiff, American Bankers Insurance Group, Inc., take nothing by this action and that Defendant, United States of America, go hence without day. The Court reserves jurisdiction over appropriate motions for attorney fees and costs. The Clerk of the Court is directed to mark this case CLOSED and DENY all pending motions as moot.