**AMERICA ONLINE, INC., Plaintiff,**

v.

**UNITED STATES, Defendant.**

**No. 03–2383–T.**

United States Court of Federal Claims.

March 30, 2005.

A. Duane Webber, Baker & McKenzie, LLP, Washington, D.C., for plaintiff. Of counsel was George M. Clarke III, Baker & McKenzie, LLP.

G. Robson Stewart, Trial Attorney, Court of Federal Claims Section, Tax Division, United States Department of Justice, Washington, D.C., for defendant. With him on the briefs were Eileen J. O'Connor, Assistant Attorney General, David Gustafson, Assistant Chief, Court of Federal Claims Section, and William K. Drew, Reviewer, United States Department of Justice.

### OPINION AND ORDER

LETTOW, Judge.

At issue is whether America Online, Inc. ("AOL") is required to pay a federal excise tax on certain communications services provided to it by Sprint Communications Company, L.P. ("Sprint"). AOL seeks a refund for the tax in the amount of $201,141 it paid on these communications services during the first quarter of 1999. Compl. at 1. The government argues that provisions of the Internal Revenue Code apply to the services at issue and require that they be taxed at an excise rate of three percent. See 26 U.S.C. § 4251(a)(1) and (b)(2).

Sprint provided long-distance and toll-free communications services to AOL for which it charged a flat rate based upon duration of calls without reference to distance. The government proffers three separate optional routes for AOL's susceptibility to the excise tax. First, according to the government, the services constituted toll telephone services under 26 U.S.C. § 4252(b)(1), which provision applies where the toll charges vary according to "distance and elapsed transmission time." 26 U.S.C. § 4252(b)(1)(A). The government interprets this statutory language to apply where a telephone charge is set based upon either distance or upon elapsed transmission time, without any need that both elements be present, and it cites a revenue ruling from 1979 that interpreted the statute in this way. It also claims that Sprint's charges to AOL varied according to whether the calls were local, interstate within the United States, or to Canada, and that this variation satisfies the distance requirement. AOL responds that the statutory definition of toll telephone services requires variation by both distance and duration and that geopolitical distinctions do not constitute variation by distance. Second, the government argues that the tax is payable under 26 U.S.C. § 4252(b)(2), which applies to a service entitling the subscriber to unlimited calls to a specified area

in exchange for a periodic charge. AOL responds that it is charged per call, not periodically, and does not gain unlimited access to a specified area. Third, the government argues that a provision in 26 U.S.C. § 4252(a) pertaining to "local telephone service" serves as a "catch-all" provision, taxing all communications services that are not specifically exempted. AOL argues that to interpret the local-service provision in that manner would render meaningless the other specific provisions of Section 4252.

AOL moved for partial summary judgment that it was not obligated to pay the excise tax at issue. The government filed a cross-motion for summary judgment. For the reasons set out below, AOL's motion for partial summary judgment is granted, and the government's cross-motion is denied.

## BACKGROUND

The Internal Revenue Code imposes a tax on certain communications services. 26 U.S.C. §§ 4251–4254 ("communications excise tax"). As amended in 1965, Section 4251 imposes a three percent tax on amounts paid for three categories of communications services, namely local telephone service, toll telephone service, and teletypewriter exchange service. Section 4252 defines each type of communication service. "Local telephone service" requires "access to a local telephone system, and the privilege of telephonic quality communication with substantially all persons having telephone or radio telephone stations constituting a part of such

local telephone system," and does not include any service identified as a toll telephone service or a private communication. 26 U.S.C. § 4252(a).[1] "Toll telephone service" consists of two types of services: those for which "there is a toll charge [paid in the United States] which varies in amount with the distance and elapsed transmission time of each individual communication" and a service entitling the subscriber to an unlimited number of communications to or from all or a substantial portion of a specified area in exchange for a periodic charge, commonly known as a "WATS" service. *Id.* § 4252(b).[2] "Teletypewriter exchange service" addresses "access from a teletypewriter or other data station to the teletypewriter exchange system of which such station is a part." 26 U.S.C. § 4252(c). Section 4253 lists exemptions from the tax for communications services that otherwise would be taxed under Section 4252. *See, e.g.,* 26 U.S.C. § 4253(h) (stating that "[n]o tax shall be imposed under section 4251 on any amount paid by a nonprofit hospital for services furnished to such organization.").

AOL purchased telecommunications services from Sprint, as well as from other companies, during the first quarter of 1999. Plaintiff's Proposed Findings of Uncontroverted Fact ("PFUF") ¶ 2; Defendant's Response to Plaintiff's Proposed Findings of Uncontroverted Fact ("DRPFUF") ¶ 2. The services purchased from Sprint fell into three general categories: those from Sprint's "Clarity" line of business communications

1. 26 U.S.C. § 4252(a) provides:

> (a) **Local telephone service.**—For purposes of this subchapter, the term "local telephone service" means—
> (1) the access to a local telephone system, and the privilege of telephonic quality communication with substantially all persons having telephone or radio telephone stations constituting a part of such local telephone system, and
> (2) any facility or service provided in connection with a service described in paragraph (1).
> The term "local telephone service" does not include any service which is a "toll telephone service" or a "private communication service" as defined in subsections (b) and (d).

2. 26 U.S.C. § 4252(b) provides:

> (b) **Toll telephone service.**—For purposes of this subchapter, the term "toll telephone service" means—
> (1) a telephonic quality communication for which (A) there is a toll charge which varies in amount with the distance and elapsed transmission time of each individual communication and (B) the charge is paid within the United States, and
> (2) a service which entitles the subscriber, upon payment of a periodic charge (determined as a flat amount or upon the basis of total elapsed transmission time), to the privilege of an unlimited number of telephonic communications to or from all or a substantial portion of the persons having telephone or radio telephone stations in a specified area which is outside the local telephone system area in which the station provided with this service is located.

services that allowed AOL subscribers to have long-distance toll-free telephone access to customer representatives at AOL's call centers ("toll-free services"), those from the "Clarity" line that allowed AOL employees to place long-distance telephone calls ("long-distance services"), and other communications services. PFUF ¶ 2; DRPFUF ¶ 2. Only the toll-free and long-distance services are at issue in this case. Both services were provided pursuant to a Promotional Discount Agreement between Sprint and AOL, which agreement incorporated some aspects of the Sprint tariff. PFUF ¶¶ 3–4; DRPFUF ¶¶ 3–4.[3] The toll-free services only covered calls from subscribers to AOL's call centers, as opposed to other AOL personnel or locations. PFUF ¶¶ 5–6; DRPFUF ¶¶ 5–6.[4] The long-distance services covered only long-distance calls by AOL employees. PFUF ¶ 13; DRPFUF ¶ 13. The cost of both services was calculated by multiplying the number of minutes of a call by a flat rate per minute, with the duration of each call measured in six-second increments for a minimum of eighteen seconds, provided that AOL satisfy a "minimum monthly commitment." Pl.'s App. 20; PFUF ¶¶ 8, 16; DRPFUF ¶¶ 8, 16.[5] The flat rate charged was different for calls placed to or from Canada than for calls to or from the United States. PRPFUF ¶¶ 8, 16. AOL also paid for local telephone service and has not challenged the applicability of the communications excise tax to those charges. PRPFUF ¶ 14.

AOL paid the tax in question, $201,141, to Sprint, which subsequently remitted it to the government. PFUF ¶¶ 10, 20; DRPFUF ¶¶ 10, 20; 26 C.F.R. § 49.4251–2(c) ("The taxes imposed by section 4251 are payable by the person paying for the services rendered, and must be paid to the person rendering the services who is required to collect the tax and return and pay over the tax."). AOL then filed a complaint with the Internal Revenue Service ("IRS"), which had not ruled on plaintiff's claim when AOL filed its complaint in this court more than six months later. PFUF ¶¶ 21–22; DRPFUF ¶¶ 21–22; 26 U.S.C. § 7422(a) (prohibiting suit for refund of internal revenue tax prior to filing a claim with the Secretary of the Treasury). AOL filed a motion for partial summary judgment that it was not obligated to pay the communications excise tax for the services at issue. The government filed a cross-motion for summary judgment, arguing that the statute applies to the undisputed facts and requires AOL to pay the tax. The court held a hearing on these cross-motions on January 12, 2005, at which the parties' arguments were clarified.

## STANDARD FOR DECISION

Courts should grant motions for summary judgment when there is "no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Rule 56(c) of the Rules of the Court of Federal Claims ("RCFC"). *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The party moving for summary judgment bears the initial burden to show the absence of genuine issues of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In ruling on a motion for summary judgment, courts must resolve all issues in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Corp.,* 475 U.S. 574, 587–88, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). If no rational trier of fact could find for the non-moving party, summary judgment is appropriate. *Id.* at 588, 106 S.Ct. 1348. When considering cross-motions for summary judgment, it is appropriate to evaluate each motion on its own merits and to deny both motions if genuine disputes over material facts exist. *Mingus Constructors,*

---

3. The promotional discount agreement was filed with the court under seal. To decide this case, it is unnecessary to disclose any confidential aspect of that agreement.

4. The government objects to this proposed finding mainly on the grounds that the payment structure was a "business decision" by AOL, not because the government disagrees with plaintiff's description of the payment structure itself.

5. AOL satisfied the minimum monthly commitment for each month of the quarter at issue in this case. Plaintiff's Reply to Defendant's Response to Plaintiff's Proposed Findings of Uncontroverted Fact ("PRPFUF") ¶ 7.

*Inc. v. United States,* 812 F.2d 1387, 1390–91 (Fed.Cir.1987).

■ When interpreting federal tax provisions as a matter of law or as a mixed question of law and fact, the statutory language should be given its natural and quotidian meaning and should not be extended by implication to reach other matters. *See Gould v. Gould,* 245 U.S. 151, 153, 38 S.Ct. 53, 62 L.Ed. 211 (1917) (holding that "[i]n the interpretation of statutes levying taxes it is the established rule not to extend their provisions, by implication, beyond the clear import of the language used, or to enlarge their operations so as to embrace matters not specifically pointed out."). *See also Leavell v. Blades,* 237 Mo. 695, 700–01, 141 S.W. 893, 894 (1911) ("When the tax gatherer puts his finger on the citizen, he must also put his finger on the law permitting it."). The government argues that this principle was overruled by *White v. United States,* 305 U.S. 281, 292, 59 S.Ct. 179, 83 L.Ed. 172 (1938). The government is correct about *White,* but only in part. *White* does not apply the no-implied-extension rule of *Gould* when the taxpayer seeks an *exemption* from a tax provision; instead, the Court opined in *White* that " '[a] taxpayer seeking a deduction must be able to point to an applicable statute and show that he comes within its terms.' " *Id.* at 292, 59 S.Ct. 179 (quoting *New Colonial Ice Co. v. Helvering,* 292 U.S. 435, 440, 54 S.Ct. 788, 78 L.Ed. 1348 (1934)). However, the *Gould* rule remains in effect when the taxpayer is arguing that the provision of a statute levying a tax does not apply to him in the first instance. *See United Dominion Indus. v. United States,* 532 U.S. 822, 838, 839, 121 S.Ct. 1934, 150 L.Ed.2d 45 (2001) (comparative commentary by Justice Thomas, concurring, and Justice Stevens, dissenting); *Ocean Drilling & Exploration Co. v. United States,* 988 F.2d 1135, 1156 (Fed.Cir. 1993) (quoting *Estate of Renick v. United States,* 231 Ct.Cl. 457, 687 F.2d 371, 376 (1982), which in turn quoted *Gould*). Accordingly, because the statute at issue levies a tax, rather than exempts taxpayers or services from a tax, the *Gould* rule remains applicable.

## ANALYSIS

Recently, six cases have been decided by federal trial courts addressing the applicability of the communications excise tax to similar services. Five of those decisions have held that the statute did not oblige the plaintiffs to pay the excise tax. *See Honeywell Int'l, Inc. v. United States,* 64 Fed.Cl. 188, 202 (2005); *Reese Bros., Inc. v. United States,* 2004 WL 2901579, at *15 (W.D.Pa. Nov.30, 2004); *National R.R. Passenger Corp. v. United States,* 338 F.Supp.2d 22, 30 (D.D.C. 2004); *Fortis, Inc. v. United States,* 2004 WL 2085528, at *16 (S.D.N.Y. Sept.16, 2004); *Office Max, Inc. v. United States,* 309 F.Supp.2d 984, 1007 (N.D.Ohio 2004). One case reached the contrary conclusion and upheld application of the tax. *See American Bankers Ins. Group, Inc. v. United States,* 308 F.Supp.2d 1360, 1373 (S.D.Fla.2004).

## APPLICABILITY OF SECTION 4252(b)(1)

The government makes several arguments in support of its position that AOL should be obliged to pay the tax under 26 U.S.C. § 4252(b)(1) applicable to toll telephone service. First, the government points to the phrase in the definition of such service that the charges for the service must vary by "distance and elapsed time," arguing that the statute is ambiguous and that the court should accordingly defer to the legislative history. The government interprets that history to mean that Congress wanted to tax all communications services not explicitly exempted in Section 4253. Def.'s Cross–Mot. at 25.[6] Second, it argues that AOL's promotional discount agreement with Sprint

---

**6.** To show that the context in which the statutes were enacted supports an expansive applicability of the communications excise tax, the government has proffered affidavits of Alan Pearce and Paul B. Vasington, which together provide an historical overview of the telephone industry and of the federal excise tax. AOL argues that the court should strike both affidavits because they include lay opinions inadmissible under Fed.

R.Evid. 701 and they cannot constitute expert opinions about a legal issue under Fed.R.Evid. 702. Pl.'s Reply and Response to the Cross–Motion of the United States for Summary Judgment and Brief in Support Thereof ("Pl.'s Reply") at 19–22. Given the court's holding in this case, it is unnecessary to rule on AOL's motion to strike. The information contained in the affidavits does not alter the court's conclusions of law.

does vary with distance because the charges for local, national, and Canadian calls differed. Third, it argues that AOL's interpretation of the statute would render the statute absurd or frustrate the purpose of the tax, and therefore should be rejected. Fourth, a twenty-five-year-old IRS revenue ruling relied on the frustration-of-purpose contention in interpreting the statutory definition of toll telephone service not to require variation in changes by distance as well as duration, and the government asks that the court deem the revenue ruling to be entitled to deference and to be persuasive. Fifth, the government argues that the revenue ruling had been issued before congressional re-enactments of the provision and therefore that Congress should be deemed to have adopted the revenue ruling's interpretation of the statute.

### A. Statutory Interpretation of Section 4252(b)(1)

#### 1. The plain-meaning rule.

In cases of statutory interpretation, courts first examine the plain meaning of the statute, and, if it is unambiguous, enforce that meaning. *Connecticut Nat'l Bank v. Germain,* 503 U.S. 249, 253–54, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992) ("[C]ourts must presume that a legislature says in a statute what it means and means in a statute what is says there. When the words of a statute are unambiguous, then, this first canon is also the last: judicial inquiry is complete."). "The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Robinson v. Shell Oil Co.,* 519 U.S. 337, 341, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997). *See also Board of Governors of Fed. Reserve Sys. v. Dimension Fin. Corp.,* 474 U.S. 361, 373–74, 106 S.Ct. 681, 88 L.Ed.2d 691 (1986).

Section 4252(b)(1) unambiguously requires that a toll charge vary in amount according to both the distance and duration of calls. It explicitly requires that the toll charge vary "in amount with the distance and elapsed transmission time of each individual communication." 26 U.S.C. § 4252(b)(1). The plain meaning of this statute is that the word "and" requires that the toll vary with both distance and duration of calls; charging a toll based on only one of these factors is insufficient to meet this definition. This meaning is made evident when Section 4252(b)(1) is contrasted with Section 4252(c), which defines "teletypewriter exchange service." That section provides that the taxable "charges" shall be determined "as a flat periodic amount, on the basis of distance and elapsed transmission time, *or in some other manner.*" 26 U.S.C. § 4252(c) (emphasis added). This phrasing is instructive. First, as used in Subsections (b) and (c), "distance and elapsed transmission time" is a phrase with two key elements. Second, in this tax statute, when Congress intended a provision to encompass a broader set of services than those specifically addressed, it included an open-ended provision such as "or in some other manner" to ensure that all related types of services are subject to the tax. No such provision is included in Section 4252(b)(1).

Nonetheless, the government argues that in some contexts, "and" can mean "or," and it contends that the statute is ambiguous regarding which usage is appropriate. Def.'s Cross–Mot. at 34. *See American Bankers Ins. Group,* 308 F.Supp.2d at 1364–65 (holding that "and" can mean "or" in some contexts, creating an ambiguity in 26 U.S.C. § 4252(b)(1)). However, just because "and" may mean "or" in some usages does not mean that in this instance its plain meaning is not apparent. *Brown v. Gardner,* 513 U.S. 115, 118, 115 S.Ct. 552, 130 L.Ed.2d 462 (1994) ("[a]mbiguity is a creature not of definitional possibilities but of statutory context"); *Fortis,* 2004 WL 2085528, at *6 ("[N]othing in the grammatical structure or context of § 4252(b)(1) requires such atypical treatment of 'and' as 'or.'"). *American Bankers* cites to two other provisions in the statute where "and" means "or." 308 F.Supp.2d at 1365. The statute defines "toll telephone system" to mean the specific systems identified in both Sections 4252(b)(1) "and" (2), and it defines communications services to mean local telephone service, toll telephone service, "and" teletypewriter service. These instances, however, refer to mutually exclusive concepts, and their context

shows that "and" means "or." In contrast, distance and time are not mutually exclusive, and when they are used together in a phrase elsewhere in the statute, they manifestly are treated as being different components. *See* 26 U.S.C. § 4252(c), quoted in part *supra.* In short, the statute's plain meaning is that both distance and duration are required predicates of charges for a toll telephone service to which an excise tax is applied under Section 4252(b)(1).

Even if the court were to consider the legislative history of the Excise Tax Reduction Act of 1965 by which the current definitions were put in place, that history suggests that Congress was acting to circumscribe the application of the communications excise tax. One purpose of that statute was to phase out the excise tax by 1969. *See Trans–Lux Corp. v. United States,* 696 F.2d 963, 966 (Fed.Cir.1982). Prior to 1965, a "toll telephone service" was "a telephone or radio telephone message or conversation for which (1) there is a toll charge, and (2) the charge is paid within the United States." Excise Tax Technical Changes Act of 1958, Pub.L. No. 85–859, § 133(a), 72 Stat. 1275, 1290 (1958). In 1965, the definition of "toll telephone service" was amended to its present form. Excise Tax Reduction Act of 1965, Pub.L. No. 89–44, § 302, 79 Stat. 136, 146 (1965). This change was made in part to update and modify the definitions "in order to reflect and to meet the changing technology and market conditions of the industry." *Trans–Lux,* 696 F.2d at 967. At that time, AT & T was the dominant long-distance carrier in the United States, and it charged subscribers either for "Message Telephone Service" with a rate that varied according to the time of day, the call's elapsed transmission time, and the distance traveled, or for "Wide Area Telephone Service" or "WATS" with a periodic charge granting unlimited access to a specified area outside of local coverage, which service was relatively new at the time. *Fortis,* 2004 WL 2085528, at *3. These two pricing schemes were taxed under Paragraphs (b)(1) and (2) of Section 4252.

Notably, Congress did not define "toll telephone service" in a generally expansive manner that would allow the statute to tax evolving technology and new services. Among other things, Congress thought the tax would expire a mere four years later. Consequently, now, forty years later, "if the statutory language no longer fits the infrastructure of the industry, the IRS needs to ask for congressional action to bring the statute in line with today's reality. It cannot create an ambiguity that does not exist or misinterpret the plain meaning of statutory language to bend an old law toward a new direction." *National R.R.,* 338 F.Supp.2d at 27–28.

The government further contends that because Congress levied the tax against all services available at the time, it must have meant to tax all future types of telecommunications services not specifically exempted. Def.'s Cross–Mot. at 22–27. This argument ignores the fact that Congress replaced a broad statute capable of taxing future types of services with one that specified which types of services were taxed. That this change had no practical effect on the services taxed in 1965 is immaterial; the changed structure of the statute has a considerable practical effect today. The government also resorts to the silence in the legislative history on narrowing the scope of the tax and argues that the silence supports its broad interpretation of the tax. Silence in the legislative history about a particular provision ordinarily is not a good guide to statutory interpretation and certainly is not more persuasive than the words of a statute. *See Brown v. Gardner,* 513 U.S. at 121, 115 S.Ct. 552 (quoting *Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.,* 511 U.S. 164, 187, 114 S.Ct. 1439, 128 L.Ed.2d 119 (1994)) ("congressional silence 'lacks persuasive significance' "). *See also Harrison v. PPG Indus., Inc.,* 446 U.S. 578, 592, 100 S.Ct. 1889, 64 L.Ed.2d 525 (1980) ("[I]t would be a strange canon of statutory construction that would require Congress to state in committee reports or elsewhere in its deliberations that which is obvious on the face of a statute.").

*2. Exceptions to the plain-meaning rule.*

When a statute's plain meaning is unambiguous on its face, it is a rare circumstance that such meaning is not followed. *United States v. Ron Pair Enters., Inc.,* 489 U.S.

235, 242, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989). The government seeks to invoke those rare exceptions. It argues that the plain meaning of the statute would lead to absurd or futile results, that it is demonstrably at odds with the intentions of the drafters when applied to the facts of this case, and that Congress has approved a contrary meaning found in an IRS revenue ruling through legislative re-enactment.

### a. Absurdity or futility.

■ The court may enforce a statute in accord with its view of the drafter's intentions when the literal application of that statute would lead to absurd or futile results. *United States v. American Trucking Ass'n,* 310 U.S. 534, 543, 60 S.Ct. 1059, 84 L.Ed. 1345 (1940). The government makes three arguments about how the literal application of the statute would produce such results. First, it claims that distance and duration cannot be the only factors that determine a toll charge; a rate must also be in place, such as $.15 per minute. Def.'s Cross–Mot. at 18. This argument rests on the implicit addition of the word "only" to the statute in an attempt to make the statute's plain meaning seem absurd. The statute does not require that duration and distance be the only factors, just that the toll charge vary according to both those factors. Use of a toll rate is permissible according to the plain meaning of the statute.

■ Second, the government argues that the plaintiff's purported meaning would be absurd because a difference in toll charge based on proportional variations in distance would be unworkable. In other words, a person placing a call to a recipient 15 miles away will usually pay the same charge per minute as a person calling a line 20 miles away. This argument also ignores the plain meaning of the statute, which does not require the tax to be proportionally based on distance, but based on some calculation of distance. So, a charge that varies per minute for calls and increases every 100 miles would be taxable under the statute even if a person calling a line 110 miles away is charged the same rate as someone calling a line 120 miles away.

Third, the government also emphasizes that the statute is written in the singular form and that a literal reading would require a single toll charge to vary based on distance and duration, which is impossible because a charge cannot vary from itself. The government's argument obfuscates the plain meaning of the statute. That the "amount" of the toll charge varies depending on the duration and the distance of a call is not absurd, whether phrased in the singular or plural. None of the government's arguments transforms the application of the statute's plain meaning into an absurdity.

### b. Frustration of purpose.

■ In rare cases when the plain meaning of the statute produces results demonstrably at odds with the intentions of its drafters, the drafters' intentions control. *Ron Pair Enters.,* 489 U.S. at 242, 109 S.Ct. 1026; *American Trucking Ass'n,* 310 U.S. at 543–44, 60 S.Ct. 1059. The government has argued that the court should follow this principle and enforce the broad principles underlying the tax instead of the specific provisions at issue. This arguments fails here because "[a]pplication of 'broad purposes' of legislation at the expense of specific provisions ignores the complexity of the problems Congress is called upon to address and the dynamics of legislative action." *Dimension Fin. Corp.,* 474 U.S. at 373–74, 106 S.Ct. 681. "Congress may be unanimous in its intent to stamp out some vague social or economic evil; however, because its Members may differ sharply on the means for effectuating that intent, the final language of the legislation may reflect hard-fought compromises." *Id.* at 374, 106 S.Ct. 681. In this case, Congress's intent was manifestly to tax certain precisely defined services, and the specific provisions of the statute govern what is taxed, not a "broad purpose" interpretation that would in effect elide those specific provisions or at least render them wholly unnecessary.

### c. Revenue Ruling 79–404.

■ In 1979, the IRS issued Revenue Ruling 79–404, 1979 WL 51192, which adopted the position that requiring variation based on both distance and duration would be so con-

trary to the drafters' intentions that the plain meaning of the statute should be ignored. That ruling acknowledged that "[l]iterally, the service provided in this case does not come within the definition of ... toll telephone service because the charge for such service does not vary with distance and therefore does not meet the requirement of section 4252(b)(1)." Rev. Rul. 79–404, 1979–2 C.B. 382. The ruling nonetheless upheld an application of the tax because "[t]he intent of the statute would be frustrated if a new type of service otherwise within such intent were held to be nontaxable merely because charges for it are determined in a manner which is not within the literal language of the statute." *Id.*[7]

When agency interpretations lack the force of law, such interpretations are entitled to deference "only to the extent that those interpretations have the 'power to persuade.'" *Christensen v. Harris County,* 529 U.S. 576, 587, 120 S.Ct. 1655, 146 L.Ed.2d 621 (2000) (quoting *Skidmore v. Swift & Co.,* 323 U.S. 134, 140, 65 S.Ct. 161, 89 L.Ed. 124 (1944)). This limited reliance, denominated *"Skidmore* deference," is contrasted with *Chevron* deference, which defers to reasonable, authorized agency interpretations of statutes when the meaning of those statutes is ambiguous. *Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.,* 467 U.S. 837, 842–44, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). *Skidmore* deference is appropriate when considering "[i]nterpretations such as those in opinion letters-like interpretations contained in policy statements, agency manuals, and enforcement guidelines, all of which lack the force of law." *Christensen,* 529 U.S. at 587, 120 S.Ct. 1655. *Chevron* deference is appropriate for formal rulemaking or adjudication and similar situations. *Id.* Prior to the Supreme Court's decisions in *Chevron* and *Christensen,* this court's predecessor granted *Skidmore* deference to IRS revenue rulings. *See St. Louis Bank for Coops. v. United States,*

224 Ct.Cl. 289, 624 F.2d 1041, 1050–51 (Ct.Cl. 1980).[8]

Regardless of whether *Skidmore* deference is appropriate, Revenue Ruling 79–404 is unpersuasive. If it is given *Skidmore* deference, the weight given to Revenue Ruling 79–404 depends on "'the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control.'" *United States v. Mead Corp.,* 533 U.S. 218, 228, 121 S.Ct. 2164, 150 L.Ed.2d 292 (2001) (quoting *Skidmore,* 323 U.S. at 140, 65 S.Ct. 161). Revenue Ruling 79–404 is not thoroughly considered, it incorporates the concession that the literal meaning of the statute differs from the results it reaches, and it is inconsistent with the subsequently rendered decision by the Supreme Court in *Dimension Financial* regarding statutory interpretation.

### d. Legislative re-enactment.

■ Several times since 1979, Congress has re-enacted the communications excise tax, *see, e.g.,* Tax Equity and Fiscal Responsibility Act of 1982, Pub.L. No. 97–248, tit. II, § 282(a), 96 Stat. 324, 568 (1982) (inserting a sunset provision for the expiration of the communications excise tax in 1986); Deficit Reduction Act of 1984, Pub.L. No. 98–369, tit. I, § 26, 98 Stat. 494, 507 (1984) (extending sunset provision until 1988); Omnibus Budget Reconciliation Act of 1990, Pub.L. No. 101–508, tit. XI, § 11217(a), 104 Stat. 1388, 1388–437 (1990) (making communications excise tax permanent), and it has amended the statute to address prepaid telephone cards. *See* Taxpayer Relief Act of 1997, Pub.L. No. 105–34, tit. X, § 1034(a), 111 Stat. 788, 937 (1997) (amending Section 4251 to tax certain prepaid telephone cards). The government argues that Congress has implicitly adopted Revenue Ruling 79–404 by adding these amendments and not changing Section 4252(b)(1) to reflect any disagreement with the ruling.

---

7. Revenue Ruling 79–404 addressed an offshore radio telephone service that used an earth satellite system to enable communication between ships at sea or facilities offshore and telephone subscribers on land. *Id.*

8. The Supreme Court recently deferred ruling on the issue of whether revenue rulings are entitled to any deference. *See United States v. Cleveland Indians Baseball Co.,* 532 U.S. 200, 220, 121 S.Ct. 1433, 149 L.Ed.2d 401 (2001).

The Supreme Court has held that "[w]here 'an agency's statutory construction has been fully brought to the attention of the public and the Congress, and the latter has not sought to alter that interpretation although it has amended the statute in other respects, then presumably the legislative intent has been correctly discerned.'" *North Haven Bd. of Educ. v. Bell,* 456 U.S. 512, 535, 102 S.Ct. 1912, 72 L.Ed.2d 299 (1982) (quoting *United States v. Rutherford,* 442 U.S. 544, 554 n. 10, 99 S.Ct. 2470, 61 L.Ed.2d 68 (1979)). An important component of this inquiry is the extent to which, if at all, Congress has considered the administrative body's decision prior to the re-enactment. When the "congressional discussion preceding re-enactment makes no reference to the . . . regulation, and there is no other evidence to suggest that Congress was even aware of the . . . interpretive position . . . [,] 'we consider the . . . reenactment to be without significance.'" *Brown v. Gardner,* 513 U.S. at 121, 115 S.Ct. 552 (quoting *United States v. Calamaro,* 354 U.S. 351, 359, 77 S.Ct. 1138, 1 L.Ed.2d 1394 (1957)).

No evidence has been produced to show that Revenue Ruling 79–404 was brought to Congress's attention or even remotely considered in its process of amending the communications excise tax. *See* Hr'g Tr. at 49–50. The other courts that have considered this argument have similarly found no such evidence. *See, e.g., Office Max,* 309 F.Supp.2d at 1004 ("[T]he legislative history of subsequent amendments to §§ 4251 and 4252 does not reflect that this particular Ruling or the issue that that Ruling addresses was ever expressly considered by Congress."). In short, without evidence that Congress actually considered (or at the very least was aware of) Revenue Ruling 79–404 in amending the statute subsequently, the Revenue Ruling has no bearing on the unambiguous meaning of the statutory language.

### B. Application of Section 4252(b)(1) to AOL

■ Sprint's toll charges to AOL did not vary based on distance. Sprint charged AOL a flat rate based on the duration of the call, with the charge increasing every six seconds and a minimum charge of eighteen seconds. Pl's App. 20; PFUF ¶¶ 8, 16; DRPFUF ¶¶ 8, 16. Local calls were billed at one rate, under a different plan, and are not at issue here. PRPFUF ¶ 14. The plan at issue here did charge different rates depending on whether the call was made to Canada or the United States. PRPFUF ¶ 8. The government claims these rates are based on distance. These rates, however, are based on geopolitical distinctions and not on distance. *See Office Max,* 309 F.Supp.2d at 996. A call from Dulles, Virginia to Toronto covers a shorter distance than a call from Dulles to Seattle, and a call from Dulles to Philadelphia would be shorter than both, yet the rate for calls to Seattle and Philadelphia would be the same, while the rate to Toronto would be different. Numerous examples demonstrate this point, but it suffices to say that differences in international or interstate rates do not mean that the toll charge varies in amount by distance.

### APPLICABILITY OF SECTION 4252(b)(2)

■ The statutory provision applicable to unlimited calls to a specific area at a periodic rate, commonly known previously as "WATS" service or service on a "WATS line," 26 U.S.C. § 4252(b)(2), is also not pertinent to the services at issue in the present case. Section 4252(b)(2) applies to services that entitle "the subscriber, upon payment of a periodic charge (determined as a flat amount or upon the basis of total elapsed transmission time), to the privilege of an unlimited number of telephonic communications to or from all or a substantial portion of the persons having telephone or radio telephone stations in a specified area which is outside the local telephone system area in which the station provided with this service is located." As is evident from the language of this provision, it requires the payment of a periodic charge, which entitles the subscriber to unlimited calls to a specified area outside the local area. The government argues that AOL paid a periodic charge in the form of a monthly phone bill, based on total elapsed transmission time, that the service did not set a maximum number of calls, and therefore, the tax should be imposed on AOL. Def.'s Cross–Mot. at 44.

This argument is contrary to the plain meaning of the statute for two reasons. First, it ignores the language requiring that the call grant unlimited access to *a specified area.* AOL did not pay a periodic fee for access to a particular area; it paid a monthly phone bill for the calls that its personnel made to *any* non-local area. *See Office Max,* 309 F.Supp.2d at 1006 ("plaintiff must pay for each and every call and may call (and receive calls from) any location where MCI provides service."). Second, the structure of Section 4252(b) divides the types of toll telephone services into charges based on individual calls, which are covered by Section 4252(b)(1), and periodic charges for unlimited calls, covered by Section 4252(b)(2). *See Fortis,* 2004 WL 2085528, at *14. The government's reading of the statute is an attempt to recast Section 4252(b)(2) to apply to individual calls, which its plain meaning does not permit.[9] This interpretation is consistent with decisions of other courts when dealing with comparable communications services. *See Honeywell International v. United States,* 64 Fed.Cl. 188, 202–03 (2005); *Reese,* 2004 WL 2901579, at *14; *National R.R.,* 338 F.Supp.2d at 29.[10] Section 4252(b)(2) is inapplicable to the services in question under the plain meaning of the statute.

*APPLICABILITY OF SECTION 4252(a)*

[12] The government lastly argues that if AOL's communications services are not taxable under either subdivision of Section 4252(b), then they must be taxable under Section 4252(a). Def.'s Cross–Mot. at 48–50. Section 4252(a) defines local telephone service as "access to a local telephone system, and the privilege of telephonic quality communication with substantially all persons having telephone or radio telephone stations . . . and . . . any facility or service provided

in connection with [such] a service." The provision ends by stating "[t]he term 'local telephone service' does not include any service which is a 'toll telephone service' or a 'private communication service' as defined in subsections (b) and (d)." 26 U.S.C. § 4252(a). The government argues that this last sentence requires that all communications services not specifically exempted by Section 4253 be taxed, and points out that all long-distance services require the use of a local telephone system.

The government's argument mischaracterizes the structure of the statute. Section 4251 sets out which items will be taxed, namely "local telephone service," "toll telephone service," and "teletypewriter exchange service." Section 4252 defines those terms. Section 4253 grants exemptions to certain services that could be construed as meeting the definitions of taxable items under Section 4252. The fact that certain exemptions are specified does not mean that anything not expressly exempted is taxed. Rather, it means that every service that is subject to the tax under Sections 4251 and 4252 will be taxed unless it is exempted. The services in question are not among the taxable services listed in these sections, and they are therefore not subject to the tax.

More specifically, the services in question do not meet the definition of Section 4252(a). The fact that long-distance calls use the local telephone service to access a larger network does not require that all services be included in this definition. If such were the case, the entire nation would be a "local telephone system." *National R.R.,* 338 F.Supp.2d at 30 ("It is inconceivable that Congress considered a nationwide telecommunications network to be 'local.'"). The plain meaning of Section 4252(a) is that local telephone service

---

9. As is the case with Section 4252(b)(1), an analysis of the legislative history also reveals that Section 4252(b)(2) does not oblige AOL to pay taxes for the services in question. The legislative history explicitly refers to the section's intent of taxing WATS, a "long-distance service whereby, for a flat charge, the subscriber is entitled to make unlimited calls within a defined area (sometimes limited as to the maximum number of hours)." H.R.Rep. No. 89–433, at 30 (1965), *reprinted in* 1965 U.S.C.C.A.N. 1645, 1677; S.Rep. No. 89–324, at 35 (1965), *reprinted in* 1965 U.S.C.C.A.N. 1690, 1725. This description

explains the mention of "total elapsed transmission time" in the statute as addressing WATS billing plans that set caps on the number of hours of service in the specified area, and shows that Congress did not intend to tax charges of individual calls under this provision.

10. *American Bankers* did not address this argument because it found the plaintiff was obligated to pay the tax under Section 4252(b)(1). 308 F.Supp.2d at 1363 n. 3.

is subject to the communications excise tax, whereas long-distance services like those obtained by AOL are not. Other courts similarly have interpreted Section 4252(a) not to address taxation of long-distance services that do not fall within Section 4252(b). *See Honeywell,* 64 Fed.Cl. at 203; *Office Max,* 309 F.Supp.2d at 1007. The services in question are not subject to taxation under Section 4252(a).

## CONCLUSION

Neither the long-distance services nor the toll-free services provided by Sprint to AOL in the first quarter of 1999 are taxable under the communications excise tax. Put simply, this case "involves a disconnect between a forty-year-old tax scheme and recent innovations in the telecommunications industry. It is plainly Congress's responsibility to decide whether to revise the statute to accommodate such developments." *Fortis,* 2004 WL 2085528, at *9. Accordingly, AOL's motion for partial summary judgment is GRANTED, and the government's cross-motion is DENIED.

In its motion for partial summary judgment, AOL requests that the court give the parties "a reasonable amount of time to enter into a stipulation as to the amount of such overpayment." Pl.'s Mot. for Summ. J. at 2. The court will accommodate this request. The parties shall file a Joint Status Report on or before April 18, 2005, in which they shall either stipulate as to the amount of the overpayment or, should they fail to reach an agreement by that time, provide a report delineating disputed matters. A status conference will be convened on April 20, 2005, commencing at 10 a.m., to address entry of judgment on a stipulation or to prepare for a trial on the amount of the refund, which trial shall begin on August 1, 2005.

It is so ORDERED.