**COMDATA NETWORK, INC., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 133–87 T.**

United States Claims Court.

Aug. 6, 1990.

Benjamin H. Dickens, Jr., Washington, D.C., atty. of record, for plaintiff. Arthur Blooston, Washington, D.C., and Joseph W. Jacobs, Tallahassee, Fla., of counsel.

Mary B. Seyferth, with whom were Acting Asst. Atty. Gen. James A. Bruton, Washington, D.C., Mildred L. Siedman, and Gerald B. Leedom, Washington, D.C., for defendant.

## OPINION

WIESE, Judge.

This is an action by plaintiff Comdata Network, Inc., for refund of federal communications excise taxes. The issues in the case are (i) whether the Wide Area Telecommunications Service (WATS) purchased by Comdata is a "toll telephone service" taxable under sections 4251 and 4252(b) of the Internal Revenue Code of 1954 (26 U.S.C. (1982)); and (ii) whether Comdata qualifies under section 4253(f) of the Code as a "common carrier" exempt from payment of the communications excise tax. These questions are before us on

cross-motions for partial summary judgement.[1] We hold for the defendant.

## I

Comdata engages in the business of providing what it calls "money transfer services." Under agreement with its customers, who are primarily trucking companies, Comdata makes funds available to individual truckers at authorized Comdata Service Centers, located at truckstops, motels, and casinos nationwide. This service allows a trucking company to provide for a driver's on-the-road fuel and living expenses without the need for large cash advances or company credit cards.

A typical transaction occurs as follows: When a trucker employed by one of Comdata's customers requests funds at a Comdata authorized service center, an agent at the service center contacts Comdata's offices on Crestmoor Road in Nashville, Tennessee, (Crestmoor Road Offices) by telephone to request authorization for the transaction. The request may be made either verbally—in the case of "manual transactions"—or electronically—for "automated transactions." In a manual transaction, a customer service representative at the Crestmoor Road Offices receives a call from the service center agent and obtains certain information—such as the identity of the person requesting funds, the company for whom that person works, and the amount of funds requested. The customer service representative then transmits this information to Comdata's mainframe computer for processing. If the customer's credit is sufficient to cover the desired transaction, the computer sends a message back to the customer service representative authorizing the extension of funds. The customer service representative notifies the agent at the service center accordingly.

In the case of automated transactions, the service center has automated equipment that allows an agent to transmit a fund request and the relevant information electronically, through telephone lines, directly to the computer system at Crestmoor Road. As in the manual transaction, Comdata's mainframe computer processes the request and issues a message either granting or denying the request. This message is then transmitted back to the agent at the service center, again electronically.

In both manual and automated transactions, if a particular request for funds is approved, the service center agent issues a Comchek—a draft payable on a Comdata account—to the trucker. The Comchek is typically negotiated at the truckstop. Comdata then bills the customer company for the amount of the draft, plus a per-transaction service fee.

Both the manual and automated transactions involve the use of a Wide Area Telecommunications Service (WATS), a service which allows the user to both initiate and receive (at no cost to the calling party) long distance telephone calls from anywhere in selected service areas at bulk rates. A service center agent reaches the Crestmoor Road Offices over the WATS system by dialing Comdata's toll-free 800 number. When this number is dialed, the call is transmitted over the local telephone system and connected with a communications system operated by South Central Bell Telephone Company, the supplier of Comdata's WATS line. Bell carries the call—using copper cable, microwave transmission, satellite communication, fibre optic cable or any combination thereof—to the central office of the Nashville telephone system serving the Crestmoor Road Offices. The call is completed over an "INWATS" access line (for incoming WATS calls) running from the local central office to Crestmoor Road.

Calls initiating at the Crestmoor Road Offices utilize an "OUTWATS" access line for the first leg, but otherwise retrace the path of incoming calls.

1. Both parties have moved for summary judgment as to the issue of Comdata's liability with respect to the taxes here at issue. By agreement of the parties, their motions do not seek calcula-tion of the amount of refund that would be owing if plaintiff were found not to be liable for these taxes.

Comdata has in place a number of security precautions that limit the use of its WATS service solely to communications between the service centers and the Crestmoor Road Offices. Use of the OUTWATS line is protected by employee access restrictions, hardwiring and other security measures. Though there are no restrictions on who may call Comdata's INWATS numbers, such a call accesses only a randomly-selected Comdata customer service representative and cannot be "patched through" to other numbers. Comdata characterizes its system as a "closed system" having a "hub and spoke" configuration, with Crestmoor Road as a "hub" that is connected by Comdata's telecommunications system to the various service centers at the terminus of each "spoke."

During the ten calendar quarters at issue in this case—covering the period April 1, 1983, through September 30, 1985—Comdata paid federal communications excise taxes on the WATS service it used in the communications between Crestmoor Road and the service centers. Subsequently, in July of 1985, Comdata stopped paying these taxes and filed certificates of exemption with South Central Bell Telephone Company, alleging that it was entitled to the statutory exemption found in section 4253(f) for common carriers. Thereafter, Comdata did not pay any excise taxes for the communications service now at issue.

In July of 1986, Comdata filed claims with the Internal Revenue Service to recover the federal communications excise taxes that it had paid on its WATS service from April 1983 to September 1985. As the basis for its claims, Comdata asserted, among other things, that the WATS service was not a taxable "communications service," and, again, that in any event the company was exempt from this taxation by virtue of its claimed status as a common carrier. No formal action was taken with respect to these claims; on March 13, 1987, Comdata filed this action.

II

Section 4251 of the Internal Revenue Code imposes federal excise taxes upon amounts paid for certain types of telephone service, among them—and the only one relevant here—"toll telephone service." Section 4252(b) of the Code defines "toll telephone service," in pertinent part, as follows:

a service which entitles the subscriber, upon payment of a periodic charge (determined as a flat amount or upon the basis of total elapsed transmission time), to the privilege of an unlimited number of telephonic communications to or from all or a substantial portion of the persons having telephone or radio telephone stations in a specified area which is outside the local telephone system area in which the station provided with this service is located.

Given this definition, it is virtually self-evident that Comdata's WATS service is a toll telephone service within the meaning of the statute, *i.e.*, a service that entitles the subscriber to the privilege of an unlimited number of telephone calls to or from a substantial portion of the telephone stations in a distant service area. Indeed, Comdata does not dispute that the service made available to it holds out the potential for such use. Comdata maintains, however, that the incidence of the tax is governed not by the capability of the service provided but rather by the actual use made of it. And since Comdata has configured the OUTWATS service so as to restrict its use to communications that can only reach the service centers, the argument is that the tax is not applicable.

We cannot accept this argument. The statute imposes the tax on a service that provides a subscriber with the "privilege" of unlimited calls to a substantial portion of the telephones located in a distant service area. In everyday speech the word "privilege" connotes right, XII *The Oxford English Dictionary* 522 (2nd ed. 1989) ("A grant ... of special rights or immunities"), and Congress, in the writing of statutes, is presumed to intend the common meaning of terms. *Banks v. Chicago Grain Trimmers Ass'n*, 390 U.S. 459, 465, 88 S.Ct. 1140, 1144, 20 L.Ed.2d 30 (1968). Thus, in the absence of any persuasive reasons to

the contrary—and none have been shown here—the statute must be taken to mean precisely what it says. Accordingly, the tax is applicable because the service provided plaintiff grants it the right to utilize the telephone lines to communicate with a substantial number of stations in a distant area. That the service may not, in fact, be so used by plaintiff is irrelevant to the existence of the privilege.

Plaintiff maintains that a contrary conclusion was reached in Rev. Rul. 79–405, 1979–2 Cum. Bull. 383. There the Internal Revenue Service decided that a communications service, denoted "Service 2," was not subject to the communications tax. Service 2 featured multiple microwave channels that provided a customer that had telephone stations in each of two cities with a direct connection between those telephones. This service offered no opportunity to access a switchboard through which other numbers on the local telephone system could be reached. Plaintiff believes that the restrictions on its communications system make it equivalent to Service 2.

Plaintiff's analysis is flawed. What was determinative in the decision respecting Service 2 was the fact that that service provided its subscribers with only limited, pre-determined telephonic connections. The system was inherently incapable of being used more expansively. Plaintiff's system, on the other hand, has no inherent use limitation. The opportunity for broad area access is there if plaintiff chooses to use it. For purposes of the communications tax, this difference is critical. In the case of Service 2, there was no capability of broad area telephone communication, hence, that service offered no privilege for such use. In the case of plaintiff's WATS lines, however, the capability for wide area usage exists and therefore also the privilege for such use.

Plaintiff also argues that even if we find Comdata's WATS service to be a taxable telephone service, we should never-

theless deem that service exempt from tax under the business use exception granted "common carriers" by 26 U.S.C. section 4253(f).[2] The contention rests on the proposition that Comdata is engaged in the business of transporting money from a trucking company through its Crestmoor Road Offices to a truck driver at a service center and is therefore entitled to the statutory exemption.

We cannot accept this argument. A common carrier, for purposes of section 4253(f), has been defined as "one holding itself out to the public as engaged in the business of transportation of persons or property from place to place for compensation, offering its services to the public generally." Rev. Rul. 76–405, 1976–2 Cum. Bull. 352. Plaintiff's business does not fit this description. It is not the transportation of money that defines plaintiff's business, but rather the authorization for transfers of money. Plaintiff is in the business of credit authorization. The fact that this authorization is carried out through electronic communication does not put plaintiff in the transportation business. Electronic communication, to the extent it could be regarded as property transportation, is the business of the telephone company, not the business of plaintiff.

### III

For the reasons stated herein, plaintiff's motion for partial summary judgment is denied and defendant's cross-motion is granted. The Clerk is directed to enter judgment accordingly.

---

**2.** Section 4253(f) reads in part as follows:

No tax shall be imposed under section 4251 on the amount paid for any toll telephone service described in section 4252(b)(2) to the extent that the amount so paid is for use by a common carrier, telephone or telegraph company, or radio broadcasting station or network in the conduct of its business as such.